UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BASILIO GONZALEZ, YOHANNY CASTRO, & FRANCISCO GARCIA, on behalf of themselves and all others so similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 1:17-cv-00276 |

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") submits this memorandum in support of its motion to dismiss the complaint (the "Complaint") filed by Plaintiffs Basilio Gonzalez ("Gonzalez"), Yohanny Castro ("Castro"), and Francisco Garcia ("Garcia," and collectively with Gonzalez and Castro, "Plaintiffs") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

INTRODUCTION

Plaintiffs' wrongful foreclosure claims are premature because Wells Fargo has not completed foreclosures on any of Plaintiffs' homes. Accordingly, Plaintiffs have not suffered any harm or damages. Regardless, Plaintiffs' claims fail as a matter of law for several reasons. First, the failure to have a face-to-face meeting with a borrower prior to foreclosure of Federal Housing Administration (FHA) mortgages does not render foreclosures invalid. Second, even if not having a face-to-face meeting affected a lender's foreclosure rights, a borrower must plead and prove actual prejudice caused by the lack of a face-to-face meeting. Plaintiffs have not alleged any prejudice here. Indeed, Wells Fargo has worked with these Plaintiffs in good faith,

providing at least one of them with a loan modification. Third, Plaintiffs have not been foreclosed and have not suffered any harm, but, to the extent Plaintiffs have suffered any harm, it is a result of their own failure to repay their loans, not Wells Fargo's conduct. Fourth, Plaintiffs' breach of the implied covenant of good faith and fair dealing claim fails because Plaintiffs have not and cannot allege any unreasonable conduct by Wells Fargo. Finally, Plaintiffs' Deceptive Trade Practices Act claim fails because the Act does not apply to mortgages or national banks, and regardless, Wells Fargo has not engaged in any unfair or deceptive conduct.

FACTS[1]

*The Gonzalez Loan*

Gonzalez owns 136 Julian Street, Providence, Rhode Island (the "Gonzalez Property"). See Compl., ¶ 29. On June 29, 2004, Gonzalez executed a note (the "Gonzalez Note") and obtained a loan from Sovereign Bank, FSB ("Sovereign") in the principal amount of $270,652.00 (the "Gonzalez Loan"). See Compl., ¶ 30. To secure the Gonzalez Loan, Gonzalez granted a mortgage (the "Gonzalez Mortgage") on the Gonzalez Property to Sovereign. See Compl., ¶ 30. Sovereign assigned the Gonzalez Mortgage to Wells Fargo on July 13, 2004 (the "Gonzalez Assignment"). See Compl., ¶ 32. Sovereign later confirmed the assignment on September 19, 2005 (the "Confirmatory Gonzalez Assignment"). See Compl., ¶ 33. Gonzalez defaulted on the Gonzalez Loan by failing to make monthly payments and Wells Fargo initiated, but did not complete, foreclosure in 2017. See Compl., ¶ 34.

*The Castro Loan*

Castro owns 21-23 Arch Street, Providence, Rhode Island (the "Castro Property"). See Compl., ¶ 40. On February 6, 2013, Castro executed a note (the "Castro Note") and obtained a

---

[1] For purposes of this motion only, Wells Fargo accepts as true the factual allegations of the Complaint. Wells Fargo reserves the right to challenge the allegations should the Complaint not be dismissed.

loan from Contour Mortgage Corporation ("CMC") in the principal amount of $124,896.00 (the "Castro Loan"). See Compl., ¶ 41. To secure the Castro Loan, Castro granted a mortgage (the "Castro Mortgage") on the Castro Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for CMC and CMC's successors and assigns. See Compl., ¶ 41. MERS assigned the Gonzalez Mortgage to Wells Fargo on August 7, 2014 (the "Castro Assignment"). See Compl., ¶ 43. Castro defaulted on the Castro Loan by failing to make monthly payments and Wells Fargo initiated, but did not complete, foreclosure in 2016. See Compl., ¶ 44.

*The Garcia Loan*

Garcia owns 109 Carr Street, Providence, Rhode Island (the "Garcia Property"). See Compl., ¶ 50. On January 15, 2010, Garcia executed a note (the "Garcia Note") and obtained a loan from Wells Fargo in the principal amount of $145,415.00 (the "Garcia Loan"). See Compl., ¶ 51. To secure the Garcia Loan, Garcia granted a mortgage (the "Garcia Mortgage") on the Garcia Property to Wells Fargo. See Compl., ¶ 51. Garcia defaulted on the Garcia Loan by failing to make monthly payments and Wells Fargo initiated, but did not complete, foreclosure in 2015. See Compl., ¶ 53.

*Plaintiffs' FHA Mortgages*

All three of Plaintiffs' mortgage loans are Federal Housing Administration ("FHA") loans insured by the Department of Housing and Urban Development ("HUD"). The mortgages reference certain HUD regulations. See Compl., ¶¶ 31, 42, 52. Paragraph 9(d) of the mortgages provides,

> **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

See Compl., ¶ 2, 23. HUD regulations specify when a mortgagee may foreclose,

> Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met. The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. In addition, prior to initiating any action required by law to foreclose the mortgage, the mortgagee shall notify the mortgagor in a format prescribed by the Secretary that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default.

24 C.F.R. § 203.606(a). Plaintiffs' Complaint focuses on other HUD regulations, specifically 24 C.F.R. § 203.604 that provide,

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . .
>
> (c) A face-to-face meeting is not required if:
>
> > (1) The mortgagor does not reside in the mortgaged property,
> >
> > (2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,
> >
> > (3) The mortgagor has clearly indicated that he will not cooperate in the interview,
> >
> > (4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or
> >
> > (5) A reasonable effort to arrange a meeting is unsuccessful.
>
> (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from

4

> the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

See Compl., ¶¶ 24-26. Unlike Subpart 203.606(a), the face-to-face meeting section does not make a face-to-face meeting a condition precedent to foreclosure.

*The Claims*

Plaintiffs' three causes of action are each based upon Wells Fargo's alleged noncompliance with the face-to-face meeting requirements of 24 C.F.R. § 203.604. The claims include: breach of contract and breach of duty of good faith and fair dealing (Count I), breach of duty of good faith and reasonable diligence (Count II), violation of R.I. Gen. Laws § 6-13 consumer protection and unfair and deceptive acts and practices laws (Count III). Plaintiffs seek declarations that foreclosure sales, which have not occurred, are void (Compl., ¶¶ 92, 104), injunctive relief enjoining the transfer of right, title, and interest in the underlying properties (Compl., ¶¶ 93, 105), as well as unidentified damages (Compl., ¶¶ 96, 108, 125). These claims are premature, and regardless, fail as a matter of law.

ARGUMENT & AUTHORITY

**I.  RULE 12(b)(6) STANDARD.**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. The United States Supreme Court clarified and heightened the Rule 8 pleading requirements when it rejected the oft-cited "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957). See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007). "The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard. Now, in order to survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A "claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1955 (internal citations omitted). Facts that are conclusively contradicted by a plaintiff's concessions or otherwise should not be credited. See Soto-Negron v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003) (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir.1987)). Here, Plaintiffs' allegations, even if presumed true, fail to state a legal claim as a matter of law.

## II. ALLEGEDLY NOT HAVING A FACE-TO-FACE MEETING DOES NOT BAR FORECLOSURES.

There is no private right of action for failing to comply with HUD regulations, including the face-to-face meeting provisions. See Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) ("There is no express or implied statutory private right of action for HUD violations."); Fed. Nat'l Mortg. Ass'n v. LeCrone, 868 F.2d 190, 193 (6th Cir. 1989) ("[N]o express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies."); Roberts v. Cameron–Brown Co., 556 F.2d 356, 360 (5th Cir. 1977) ("The National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow."); Adams v. Bank of Am., N.A., No. 2:15-01855-RDP, 2017 WL 588550, at *5 (N.D. Ala. Feb. 14, 2017) (citing Roberts and explaining, "[i]t is axiomatic that there is no express or implied statutory private right of action for HUD violations."). Accordingly, Plaintiffs cannot assert claims directly under the HUD regulations.

Realizing this, Plaintiffs attempt to rely on paragraph 9(d) of their mortgages, which provides that the mortgages "do[ ] not authorize . . . foreclosure if *not permitted* by [HUD] regulations[.]" Compl., ¶ 23 (emphasis added). Plaintiffs claim that by incorporating the HUD regulations by reference, they may assert breach of contract claims-based claims for noncompliance with any HUD regulations. Even if Plaintiffs are correct about incorporation by reference under paragraph 9(d), the incorporation is expressly limited only to regulations that prohibit foreclosure. In U.S. Bank National Association v. McMullin, the Supreme Court of New York explained that a foreclosure is not allowed under the mortgage contract if, and only if, the HUD regulations contain an express provision prohibiting foreclosure. See 47 N.Y.S.3d 882, 889 (N.Y. Sup. Ct. 2017). This is because the only section of the HUD regulations that actually prohibits foreclosure is 24 C.F.R. § 203.606(a). See id. That section provides that "[t]he mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account." Id. (quoting 24 C.F.R. § 203.606(a)). By using "unless," the provision employs "unmistakable language of condition," indicating that a lender is prohibited from commencing a foreclosure action before three payments are missed. See McMullin, 47 N.Y.S.3d at 889 (quoting MHR Capital Partners LP v. Presstek, Inc., 12 N.Y.3d 640, 645 (2009)). While this regulation prohibits foreclosure in some instances, Plaintiffs do not allege a violation of the three missed payments provision. Instead, Plaintiffs allege noncompliance with face-to-face meeting regulations that do not prohibit foreclosure.

In contrast to clear prohibitory language, the first sentence of 24 C.F.R. § 203.606(a) imposes a more general duty "to ensure" all of Part 203 servicing requirements more broadly

(including the face-to-face meeting provisions), are met. This language does not include any prohibition on foreclosure, but rather more "doubtful" language courts often consider as "embodying a promise or duty." See McMullin, 47 N.Y.S.3d at 889 (quoting Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690 (1995). Thus, while HUD requires lenders to comply with HUD regulations, it does not go so far as to say that foreclosure is prohibited for noncompliance. Instead, noncompliance carries lesser penalties. See e.g., 24 C.F.R. § 203.605(c) (subjecting mortgagee that fails to engage in loss mitigation liable to for a civil money penalty). Thus, holding face-to-face meetings is not a condition precedent to foreclosure. The HUD regulations do not bar foreclosure for any form of noncompliance with Part 203, but rather only those provisions specifically designated (e.g., barring foreclosure commencement until the borrower misses three payments). Where there is no express bar to foreclosure or use of conditional language with regard to the face-to-face meeting provisions of 24 C.F.R. § 203.604, face-to-face regulations are not the type of regulation where "foreclosure is not permitted." Thus, paragraph 9(d), which only applies to HUD regulations that prevent foreclosure, is not triggered.

### III. PLAINTIFFS IGNORE THE PURPOSE AND SPIRIT OF THE HUD REGULATIONS ON LOSS MITIGATION.

Plaintiffs make technical allegations of noncompliance with face-to-face meeting provisions to avoid the spirit and purpose of HUD regulations for lenders to make good faith efforts to review borrowers for loss mitigation options prior to foreclosure. In fact, HUD has publicly agreed with those who have called the face-to-face meeting requirement "obsolete and unnecessary." HUD, Revisions to the Single Family Mortgage Insurance Program, 72 Fed. Reg. 56,156, 56,159 (Oct. 2, 2007) ("Comment: The face-to-face meeting requirement is obsolete and unnecessary and should be removed in the final rule. Several commenters stated that the meeting

requirement was adopted nearly 30 years ago, before the current collection, delinquency assistance, and loss mitigation measures were in place . . . . HUD response: HUD agrees with the commenters . . . "). Here, Plaintiffs have not, and cannot, allege that Wells Fargo did not make a good faith effort to review and offer them loss mitigation options. For example, Plaintiffs intentionally omit that Wells Fargo gave Gonzalez a loan modification.[2] This agreement is recorded in the Providence Land Evidence Records at Book 10526 Page 189.[3] Rather than disclose Wells Fargo's successful efforts to help Plaintiffs avoid foreclosure, Plaintiffs shift focus to HUD regulations in an attempt to create a technical dispute even though they have not suffered any prejudice.

### A. Plaintiffs Cannot Show Prejudice.

Even if the Court were to determine that noncompliance with HUD face-to-face regulations limit a lender's foreclosure rights, that is only the beginning of the inquiry. Courts that have enforced face-to-face provisions still require a plaintiff to show some form of prejudice before invalidating a foreclosure sale. Here, Plaintiffs do not and cannot allege prejudice from an alleged lack of a face-to-face meeting. See Jose v. Wells Fargo Bank, N.A., 89 Mass. App. Ct. 772, 778 n.12 (2016) (noting further proceedings required to address whether failure to conduct face-to-face meeting caused any prejudice); Wells Fargo Bank, N.A. v. Cook, 87 Mass. App. Ct. 382, 387, review denied, 472 Mass. 1107 (2015) (highlighting element of prejudice for claims in face-to-face meeting context);. Rivas v. Chelsea Hous. Authy., 464 Mass. 329, 337 (2013) (requiring demonstration of prejudice arising from agency's disregard of its rules). Put simply, Plaintiffs must do more than just allege a lack of face-to-face meetings. Plaintiffs must

---

[2] The Court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (citing In re Colonial Mortgage, 324 F.3d 12, 15–16 (1st Cir. 2003)).

[3] Wells Fargo has engaged in loss mitigation with Castro and Garcia but those efforts have not resulted in recorded modifications. For example, Wells Fargo offered Garcia a loan modification in 2015 and is currently exploring a short sale with Castro.

allege that Wells Fargo did not in good faith consider them for or offer loss mitigation options. They have not and cannot do so here. Without alleging any actual prejudice from a lack of face-to-face meetings or that Wells Fargo did not otherwise engage in a good faith effort to explore loss mitigation options, Plaintiffs have not pled a plausible claims.

## IV. PLAINTIFFS HAVE NOT SUFFERED ANY HARM AND DO NOT HAVE ANY DAMAGES BECAUSE NO FORECLOSURES HAVE BEEN COMPLETED.

Plaintiffs have not and cannot plead any damages because foreclosures of their homes have not been completed. To prevail on a breach of contract claim, a plaintiff "must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." Beacon Mut. Ins. Co., 7 F. Supp. 3d at 167 (quoting Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir.2010)). Here, since Plaintiffs have not been foreclosed, they cannot show any harm or injury.

In addition to a lack of damages, the speculative injuries alleged in the Complaint were not caused by Wells Fargo. For example, Plaintiffs allege that because Wells did not have a face-to-face meeting under 24 C.F.R. § 203.604 that they lost property interest, paid higher principal balances, saw negative credit reporting, and accrued fees. See Compl., ¶¶ 87 & 102. None of these alleged harms, however, flow from the alleged lack of face-to-face meetings. Rather, they are the direct result of Plaintiffs' breaches of their mortgage payment obligations, which necessarily predate any face-to-face meeting. Plaintiffs have not, and cannot, allege that not having a face-to-face meeting caused them to miss out on loss mitigation options that Wells Fargo did not otherwise offer to them, most notably Gonzalez, who received a loan modification. Thus, to the extent Plaintiffs experienced any negative consequences, they were the direct result of Plaintiffs' payment defaults, not the manner in which Wells Fargo tried to resolve those defaults. Having failed to sufficiently allege damages, Plaintiffs' claims fail as a matter of law.

## V. PLAINTIFFS FAIL TO ALLEGE UNREASONABLE CONDUCT.

The implied covenant of good faith and fair dealing claims also fail because Plaintiffs have not alleged unreasonable conduct. Under Rhode Island law, there is an "implied covenant of good faith and fair dealing between parties to a contract so that contractual objectives may be achieved." Fleet Nat'l Bank v. Liuzzo, 766 F. Supp. 61, 67 (D.R.I. 1991) (quoting Ide Farm & Stable, Inc. v. Cardi, 110 R.I. 735, 739, 297 A.2d 643 (1972)). "[T]he party alleging the breach cannot use the implied duty of good faith to rewrite the contract; the duty of good faith merely requires parties to perform the obligations actually expressed in the contract." T.G. Plastics Trading Co. Inc. v. Toray Plastics (Am.), Inc., 958 F. Supp. 2d 315, 327 (D.R.I. 2013) (citing AccuSoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir.2001)). To establish a breach of the implied covenant of good faith and fair dealing, the plaintiffs must demonstrate that the actions in question are free from arbitrary or unreasonable conduct." Baccarat, Inc., 66 F. Supp. 2d at 329 (citing Thompson Trading, Ltd. v. Allied Breweries Overseas, Trading, Ltd., 748 F. Supp. 936, 942 (D.R.I. 1990) (citing Psaty & Fuhrman, Inc. v. Housing Authority of Providence, 76 R.I. 87, 92, 68 A.2d 32 (1949)); see Landry v. Farmer, 564 F. Supp. 598, 611 (D.R.I. 1983) (holding that defendant's actions did not breach the implied covenant of good faith and fair dealing because such actions were based on legitimate business considerations).

Since the mortgage contracts do not require Wells Fargo to have face-to-face meetings with Plaintiffs, there can be no breach of the implied covenant of good faith and fair dealing. Plaintiffs cannot use the implied covenant to create rights that are not expressly included in their mortgages. However, even if the Court were to find a face-to-face obligation, Plaintiffs still must allege that Wells Fargo acted unreasonably by not having face-to-face meetings. More specifically, Plaintiffs must allege that Wells Fargo unreasonably prevented them from taking advantage of loss mitigation opportunities, thereby thwarting purpose of the HUD face-to-face

regulations. The Complaint makes no such allegations. Where Plaintiffs have not and cannot allege that Wells Fargo did not offer loss mitigation options, they have not alleged that it was unreasonable for Wells Fargo not to have a face-to-face meeting to discuss loss mitigation.

Further, even if Plaintiffs had alleged that not having an in-person meeting was unreasonable in that it prevented a loss of opportunity, they have not alleged that they took any measures to mitigate those damages by attempting to have an in-person meeting. "Under Rhode Island law a party claiming injury that is due to breach of contract or tort has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages." Tomaino v. Concord Oil of Newport, Inc., 709 A.2d 1016, 1026 (R.I. 1998) (citing Bibby's Refrigeration, Heating & Air Conditioning, Inc. v. Salisbury, 603 A.2d 726, 729 (R.I.1992). Under this "doctrine of avoidable consequences," Plaintiffs cannot sit silent while their damages accumulate. See id. Thus, to the extent that Wells Fargo's conduct could be considered unreasonable or cause damage (despite not having completed a foreclosure), Plaintiffs made no effort to mitigate by trying to arrange an in-person meeting. For these reasons, Plaintiffs breach of the implied covenant of good faith and fair dealing claim fails.

## VI. PLAINTIFFS' DECEPTIVE TRADE PRACTICES CLAIM FAILS BECAUSE THE STATUTE DOES NOT APPLY TO MORTGAGES WITH A NATIONAL BANK.

Similar to their contract-based claims, Plaintiffs' Rhode Island Deceptive Trade Practices Act ("DTPA") claim also fails as a matter of law. Under the DTPA, "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a[n unfair or deceptive] act, or practice . . . may bring an action . . . " R.I. Gen. Laws § 6-13.1-5.2(a). Plaintiffs' DTPA claim fails because: (1) the DTPA does not apply to mortgage loans; (2) Wells Fargo's compliance with HUD regulations is

exempt from the DTPA; (3) Plaintiffs have not alleged unfair or deceptive conduct; and (4) Plaintiffs cannot allege any ascertainable loss of money or property.

Plaintiffs' claim for unfair or deceptive conduct should be dismissed because the DTPA does not apply to mortgage loans. See Miller v. Wells Fargo Bank, 2015 WL 1515942, at *6 (R.I. Super. Ct. 2005). The Rhode Island Superior Court has determined that "the Deceptive Trade Practices Act speaks of purchases or leases of goods or services primarily for personal, family or household purposes[ ]. A morgage [sic] loan is not a purchase or lease of goods or services and hence the subject matter of the statute is inapplicable." Id. (quoting De Simone v. Warwick Fed. Sav. & Loan Ass'n, No. C.A. 80-822, 1981 WL 386509, at *1 (R.I. Super. Oct. 20, 1981). Where Plaintiffs' DTPA claim is premised upon their mortgage loans, it is outside the scope of the DTPA.

In addition, the DTPA exempts certain actions, "[n]othing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." R.I. Gen. Laws § 6-13.1-4. The DTPA does not apply to Wells Fargo where it is a national bank, subject to regulation by the U.S. government. See Miller, 2015 WL 1515942, at *8 ("The Bank is a federally regulated entity, and therefore not subject to the DTPA."); see also Chavers v. Fleet Bank, N.A., 844 A.2d 666, 670 (R.I. 2004) (holding bank's credit card solicitation efforts exempt from DTPA under section 6-13.1-4); State v. Piedmont Funding Corp., 119 R.I. 695, 382 A.2d 819 (1978) (finding that the General Assembly clearly intended to exempt all those activities and business relations which are subject to monitoring by state or federal regulatory bodies or officers). Wells Fargo is a national bank regulated by the federal government and HUD has the power and authority to enforce its own regulations. Accordingly,

Plaintiffs' DTPA claim against Wells Fargo for failure to comply with HUD regulations is exempted under R.I. Gen. Laws § 6-13.1-4.

Even if mortgage loans fell under the purview of the DTPA and Plaintiffs' claim was not exempted, Plaintiffs fail to allege unfair or deceptive conduct. R.I. Gen. Laws § 6-13.1-2 declares unlawful "[u]nfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce". To establish deceptive conduct, plaintiffs must allege three elements: "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." Long v. Dell, Inc., 93 A.3d 988, 1003 (R.I. 2014) (citations omitted). Plaintiffs fail to address any of these elements of deceptive conduct. First, Plaintiffs have not alleged that any act or omission by Wells Fargo actually mislead them or would be likely to mislead them. Indeed, Plaintiffs have not alleged that by not having a face to face meeting, Wells Fargo mislead them about anything. Second, Plaintiffs have not made any allegations regarding the materiality of a face-to-face meeting. And, Plaintiffs have not alleged that Wells Fargo failed to engage in good faith efforts to provide loss mitigation nor have they alleged that a face to face meeting would have had any impact on those efforts. For these reasons, Plaintiffs fail to allege deceptive conduct.

Lastly, the DTPA applies only when a person alleges "any ascertainable loss of money or property" as a result of the allegedly-deceptive act. R.I. Gen. Laws § 6-13.1-5.2(a). The Complaint does not and could not include such allegations because no foreclosure sales occurred. For the foregoing reasons, the Plaintiffs' claim of unfair or deceptive practices fails as a matter of law and should be dismissed.

CONCLUSION

For the foregoing reasons, Wells Fargo hereby request that the Court (1) grant its motion, (2) dismiss the Complaint with prejudice, and (3) grant such other relief as the Court deems just and equitable.

Respectfully submitted,

Wells Fargo Bank, N.A.,

By its counsel,

*/s/ David E. Fialkow*
David. E. Fialkow (Bar No. 9318)
david.fialkow@klgates.com
Edward J. Mikolinski (Bar No. 9035)
edward.mikolinski@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: +1 617 261 3100
Facsimile: +1 617 261 3175

Dated: August 1, 2017

**CERTIFICATE OF SERVICE**

I, David E. Fialkow certify that the foregoing filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 1st day of August 2017.

*/s/ David E. Fialkow*
David E. Fialkow